**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

LUIS ALBERTO CHIRINOS GONZALEZ,

Petitioner,

v.

JEREMY CASEY, Warden of Imperial Regional Detention Facility of U.S. Immigration and Customs Enforcement, et al.,

Respondents.

Case No.: 3:26-cv-01265-RBM-MMP

**ORDER DENYING PETITIONER'S MOTION FOR RECONSIDERATION**

**[Doc. 15]**

Pending before the Court is Petitioner Luis Alberto Chirinos Gonzalez's ("Petitioner") Motion for Reconsideration of May 13 Order ("Motion"). (Doc. 15.) For the reasons set forth below, the Motion is **DENIED**.

## I. BACKGROUND

### A. Factual Background

Petitioner, a national and citizen of Venezuela, entered the United States on or around November 14, 2021. (Doc. 1 ¶¶ 15–16.) Petitioner was then detained, issued a Notice to Appear ("NTA"), and released on his own recognizance shortly thereafter. (*Id.* ¶ 16; *see* Doc. 2-1 ¶ 5.) Petitioner filed an asylum application in February 2023 and is also

"a derivative beneficiary of his wife's asylum application, which has been pending since Spring 2022." (Doc. 1 ¶ 18.)

On February 3, 2023, Petitioner was arrested for driving under the influence and subsequently convicted on January 10, 2024. (*Id.* ¶ 21; *see* Doc. 10-2 at 3.) On September 23, 2023, Petitioner applied for Temporary Protected Status ("TPS") under 8 U.S.C. § 1254a and "pursuant to the [2023] designation of TPS for Venezuela." (Doc. 1 ¶ 19.) "His application was granted on February 15, 2024." (*Id.*; *see* Doc. 2-2, Ex. A at 5–6.)

On June 27, 2025, Petitioner "was arrested by ICE when he attended a probation appointment related to his driving under the influence conviction." (Doc. 1 ¶ 22; *see* Doc. 10-2 at 2.) He was then transferred and detained at the Rio Grande Processing Center in Texas. (Doc. 1 ¶ 22.) On September 1, 2025, Petitioner sought to renew his TPS pursuant to the most recent January 17, 2025 extension by submitting an Application for TPS on an I-821 Form. (*See* Doc. 1 ¶ 19; Doc. 2-2, Ex. B at 8.) Petitioner received a notice confirming receipt of his application. (*See* Doc. 2-2, Ex. B at 8.) On October 3, 2025, Petitioner was released from ICE detention under the Alternatives to Detention ("ATD") program "with an electronic ankle monitor and instructions to report to ICE." (Doc. 1 ¶ 23; *see* Doc. 10-2 at 3.)

On or around January 4, 2026, Petitioner "was arrested and charged with misdemeanor violations of New York Vehicle and Traffic Law § 1198(9)(d) ('No person subject to a court ordered ignition interlock device shall operate a motor vehicle without such device.') and New York Vehicle and Traffic Law § 511 (aggravated unlicensed operation of a motor vehicle)." (Doc. 1 ¶ 24.) "After being detained for [about three hours]at the Nassau County Police station, [Petitioner] was transferred to federal immigration custody." (*Id.*; *see* Doc. 2-1 ¶ 18.) His new criminal charges remain pending and he is currently detained at the Imperial Regional Detention Facility. (Doc. 1 ¶¶ 6, 24.)

**B. Procedural Background**

On February 27, 2026, Petitioner commenced this action by filing the Petition and a TRO Motion. (Docs. 1–2.) Respondents filed a Return to the Petition on March 11, 2026.

(Doc. 5.) Petitioner filed a Reply in Support of the Petition on March 12, 2026. (Doc. 7.) Pursuant to this Court's Order (Doc. 9), Respondents filed Supplemental Briefing on April 21, 2026. (Doc. 10.) Petitioner filed a Response to Respondents' Supplemental Briefing on April 24, 2026. (Doc. 11.)

On May 13, 2026, the Court granted in part the Petition and ordered that Petitioner be provided with an individualized bond hearing. (Doc. 12 at 11.) To the extent that Petitioner requested his release, the Court denied the Petition. (*Id.*)

On June 9, 2026, Petitioner filed the instant Motion. (Doc. 15.) Respondents filed an Opposition to the Motion on June 24, 2026. (Doc. 17.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 59(e) allows a district court to reconsider or amend a judgment. Fed. R. Civ. P. 59(e). Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

The moving party bears a "heavy burden" to justify "reconsideration of a court's prior order." *Inventist, Inc. v. Ninebot Inc.*, 664 F. Supp. 3d 1211, 1215 (W.D. Wash. 2023). A "motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Kona*, 229 F.3d at 890.

## III. DISCUSSION

Petitioner contends this Court erred in denying his release from custody "on the ground that his TPS did not 'extend[ ] beyond its original expiration on April 2, 2025, without USCIS's approval of his re-registration application.'" (Doc. 15 at 15 (citing Doc.

12 at 7).) Respondents argue that the Court's "apparent error" was a "harmless error" because "the issue of when exactly Petitioner's TPS expired is immaterial" "to the issue of whether he had TPS when he was detained on January 5, 2026." (Doc. 17 at 2.)

Clear error occurs when, "on the entire record, the Court is left with the definite and firm conviction that a mistake has been committed." *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, "[a] district court does not commit clear error warranting reconsideration when the question before it is a debatable one." *Id.* (citation omitted). "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must be dead wrong." *3D Sys., Inc. v. Wynne*, Case No.: 21-cv-1141AGS-DDL, 2026 WL 706083, at *1 (S.D. Cal. Mar. 12, 2026) (quoting *United States v. Hollis*, 506 F.3d 415, 421 (5th Cir. 2007)).

In the Petition, Petitioner claimed his TPS "must be deemed valid" based on the declaratory judgment issued on December 10, 2025 by the Northern District of California in *National TPS Alliance v. Noem*. (Doc. 1 ¶ 2 (citing *Nat'l TPS All. v. Noem*, Case No. 25-cv-01766-EMC, 2025 WL 3539156, at *2 (N.D. Cal. Dec. 10, 2025) (the "December 10th Order")).) Specifically, Petitioner argued that the December 10th Order "has preclusive effect in [this] case, controlling the legal question of whether members of the National TPS Alliance . . . , such as [himself], retain their TPS status." (*Id.* ¶¶ 2, 33–34.) The Court rejected Petitioner's arguments and agreed with Respondents that "despite the Ninth Circuit's affirmance, the September 5th Order remains subject to a Supreme Court stay" and "the December 10th Order did not set aside the agency's challenged actions." (Doc. 12 at 6.) The Court held that:

> This creates a thorny question as to whether [Petitioner] is entitled to release on the basis of his TPS; the declaratory judgment decision held that the termination of TPS was unlawful, but the Supreme Court has stayed any coercive effect of the holdings, *meaning [Petitioner] does not currently hold valid TPS.*

(*Id.* (quoting *O.G.M. v. Sage*, No. 4:26-CV-00780, 2026 WL 1242754, at *3 n. 35 (M.D.

Pa. May 6, 2026)) (emphasis added).) After making this determination, the Court explained that:

> *Even if* Respondents are precluded from arguing that DHS's vacatur and termination orders are lawful, and *assuming* the Supreme Court's stay is lifted, Petitioner's release on the basis of his prior TPS is not appropriate at this time. Petitioner *advances no argument or evidence demonstrating* that his TPS extended beyond its original expiration on April 2, 2025, without USCIS's approval of his re-registration application.

(*Id.* at 7 (emphasis added).)

In the instant Motion, Petitioner argues that this Court "denied release on the ground that his TPS did not 'extend[ ] beyond its original expiration on April 2, 2025, without USCIS's approval of his re-registration application.'" (Doc. 15 at 15 (citing Doc. 12 at 7).) Contrary to Petitioner's assertions, the Court did not hold that Petitioner's "TPS lapsed on April 2, 2025." (*See* Doc. 15 at 11.) This portion of the Court's Order was an observation, rather than the basis of the Court's decision. Instead, the Court's holding was that Petitioner "does not currently hold valid TPS" because the Supreme Court had stayed any coercive effect of the December 10th Order's declaratory judgment. (*See* Doc. 12 at 7 (citation omitted).)

And as the Court also noted, "the impact of the ongoing litigation in *National TPS Alliance* remains uncertain." (Doc. 12 at 7.) The question of whether Petitioner's TPS was valid is therefore a debatable one, as evidenced by the split in district court decisions on the issue. *Compare Alvarez v. Chestnut*, No. 1:26-cv-01293-DC-CKD (HC), 2026 WL 604195, at *4 (E.D. Cal. Mar. 4, 2026) ("In view of [the December 10th Order] and Petitioner's timely re-registration for extension of TPS pursuant to the 2025 TPS extension, Petitioner likely retains his TPS until October 2, 2026, so long as Petitioner remains eligible for TPS."); *with Herrera v. Noem*, 825 F. Supp. 3d 1025, 1035 (D. Ariz. 2026) ("Nor does the Court find the NTPSA court's justification for disregarding the Supreme Court's stay orders persuasive. It is true that the Supreme Court did not provide its reasoning for granting the government's request for a stay. But the Supreme Court's exercise of its

discretion to grant a stay does not mean nothing, as the NTPSA court treated it."). This is fatal to Petitioner's Motion for Reconsideration, which may only be granted if the Court's error is so clear as to be beyond debate. *See Smith*, 727 F.3d at 955 ("A district court does not commit clear error warranting reconsideration when the question before it is a debatable one.") (citation omitted). Accordingly, Petitioner fails to establish a clear error in the Court's conclusion or that reconsideration is otherwise warranted.

## IV. CONCLUSION

Based on the foregoing reasons, Petitioner's Motion for Reconsideration (Doc. 15) is **DENIED**.

**IT IS SO ORDERED**.

DATE: September 25, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE